## Duncan v. City of Lexington, et al.

(Decided October 6, 1922.)

### Appeal from Fayette Circuit Court.

1. Municipal Corporations—Validity of Ordinances.—The authority conferred by section 3063 upon any citizen to test the validity of any ordinance of a city of the second class, only authorizes an action to test the validity of an ordinance in relation to an existing controversy arising thereunder and directly affecting such person.

2. Municipal Corporations—Pleading—Controverted Allegation.— Where, after answer has been filed, a demurrer was sustained to the petition and plaintiff declined to plead further, and thereafter upon a submission for final judgment without proof the petition was dismissed, the controverted allegations of the petition are not to be accepted as true, but the facts are to be ascertained as disclosed by the pleadings of both parties and against the plaintiff where she had the burden of proof as well as with reference to the undenied allegations of the answer.

3. Municipal Corporations—Quarantine—Syphilitic Persons.—Cities of the second class have power under section 3058 to empower regularly constituted boards of health and the health officer to quarantine persons having syphilis in contagious form.

4. Municipal Corporations—Quarantine.—The ordinance of the city of Lexington here involved, authorizing and directing the city health officer to quarantine persons having or "reasonably suspected of having syphilis" or other venereal diseases, is valid in so far as it relates to persons known to be thus infected; and one who admits such infection can not question the validity of the ordinance with reference to persons "reasonably suspected, etc."

5.  Municipal Corporations—Quarantine.—Where plaintiff, having been confined in quarantine upon order of the health officer issued upon information and belief only, thereafter voluntarily submits and consents to an examination which proves she has syphilis in "an active, virulent, infectious and communicable form," she is not then entitled to a writ prohibiting the enforcement of the quarantine against her or a mandatory order of release, even if her original detention upon information and belief merely was not authorized.

6.  Judgment—Correct Judgment—Reversal.—A correct judgment will not be reversed, even if the court rendering it assigns a wrong reason therefor.

R. E. L. MURPHY and TAYLOR N. HOUSE for appellant.

JAS. A. WILMORE and W. H. TOWNSEND for appellee.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

Lexington is a city of the second class, and the appellant, Mrs. Ruby Duncan, is a resident and citizen thereof. The city health officer, acting under authority, or supposed authority, of a regularly enacted city ordinance, caused appellant's arrest and detention in quarantine. Questioning the validity of the ordinance, her arrest and detention in quarantine thereunder, she instituted this action in the circuit court pursuant to the provisions of section 3063, Kentucky Statutes, for a writ of prohibition against the city, its health board and various health officers, to prevent the enforcement of the ordinance against her, and for a mandatory injunction ordering her release from quarantine. The circuit court having sustained a demurrer to her petition and dismissed same, she appeals.

Although such an action as this is authorized by section 3063 of the statutes by any *bona fide* resident and citizen to test the validity of any ordinance of a city of the second class, it does not authorize, as counsel for appellant assume in their brief, attacks upon provisions of an ordinance having no application to the plaintiff under the particular facts presented by the record and about which a real controversy does not exist. This is necessarily true under thoroughly established rules of practice; and we expressly held in Searcy v. Fayette Home Tel. Co., 143 Ky. 811, 137 S. W. 777, that moot questions could not be litigated under this section.

We can not, therefore, discuss or consider most of the interesting constitutional questions argued by counsel for appellant, but must confine ourselves to the facts of

this case and the provisions of the ordinance directly involved thereby.

Neither can we, upon the record as made up, accept as the facts of the case the allegations of the petition, although ordinarily this must be done where, as here, a demurrer was sustained to the petition and the same dismissed upon refusal of the plaintiff to plead further. This is true because defendants' answer had been filed before the demurrer to the petition was acted upon; and the judgment was thereafter entered upon a submission for final judgment upon the entire record, which of course includes the answer.

By their answer defendants put in issue, and thereby cast upon plaintiff the burden of proving, practically every allegation of the petition, except the fact and manner of plaintiff's arrest and detention in quarantine by order of the city health officer; and plaintiff offered no proof to sustain any of the controverted allegations upon which the petition and argument of counsel are in the main based. In addition, the answer alleges, and it is not denied, that plaintiff at the time of her arrest and for a considerable time prior thereto, was ''a prostitute, living and earning a livelihood as such in the city of Lexington,'' and that she was then and is now afflicted with syphilis ''in an active, virulent, infectious and communicable form.'' It also stands admitted that the ordinance providing for the arrest and detention of persons so afflicted was regularly and duly enacted and published, and that the defendants are the properly constituted health officers of the city.

Moreover, in the absence of proof and under the pleadings it must be taken as true, despite the allegations of the petition to the contrary, that plaintiff was arrested upon a warrant issued by the health officer upon reasonable grounds for believing that she had syphilis, and is being detained, after an examination voluntarily submitted to which proved her infection, in the hospital quarters of the city jail with others of her own sex similarly affected; that in such quarters she is completely separated and removed from those confined in the jail under charge or conviction of crime; that such quarters were regularly designated as a quarantine area for such purpose, are properly equipped therefor, and in charge of competent physicians and nurses; and that she is detained therein in quarantine and for treatment only and will be released as soon as the disease ''yields to treat-

ment and ceases to be communicable and to be a menace to the public health.''

It therefore seems clear to us that the principal if not the sole questions for decision, are whether or not the city had the power to ordain and the ordinance provides for the arrest and detention in quarantine in a properly equipped, managed and designated hospital, of known prostitutes afflicted with syphilis in an ''active, virulent infectious and communicable form.''

That such power is inherent in a municipal corporation, even in the absence of constitutional or legislative provision with reference thereto, we do not doubt; but we need not decide or discuss that question since section 2059, Kentucky Statutes, expressly authorizes the establishment of boards of health in cities such as Lexington, and section 3058, which is a part of the charter of second class cities, confers upon the city council authority ''to establish and enforce quarantine laws and regulations to prevent the introduction and spread of contagious diseases in the city and within two miles thereof;'' ''to establish and maintain hospitals in and out of the city;'' ''to secure the general health of the inhabitants by any necessary measure'' and ''to constitute a board of health and elect or appoint necessary health officers.''

Construing these and several related statutes, we held in Hengehold v. City of Covington, 108 Ky. 752, 57 S. W. 495, that cities of the second class are expressly authorized to empower the local health board to order the removal of persons infected with smallpox to a properly equipped pesthouse, and to enact ''additional reasonable regulations to prevent the spread of epidemic diseases.''

By no course of reasoning can the fact that smallpox, an epidemic disease, was there involved differentiate that case from this one involving syphilis, a contagious disease, since the provisions of the charter of the city under which that conclusion was reached refer to contagious rather than epidemic diseases.

Whether or not such power may be conferred upon the health officer alone was also involved and decided in the Hengehold case, the court giving as the reason for holding that it could be so conferred: ''In such cases the necesity for immediate action is imperative, and it is not unreasonable to permit the health officer or less than a quorum of the board to order such removal in a case where it does not appear that the removal would endanger the patient's life.''

We are, therefore, clearly of the opinion that the city had the power to authorize the health officer alone to cause plaintiff's removal to and detention in the hospital quarters of the city jail especially prepared, equipped and designated as a quarantine area for persons afflicted as admittedly she was and is.

Subsection (a) of section 4 of the ordinance provides: "The health officer is authorized and directed to quarantine persons who have, or are reasonably suspected of having syphilis, gonnorhea or chancroid whenever in the opinion of said health officer or the State Board of Health, or its secretary, quarantine is necessary for the protection of public health."

This subsection also provides that the health officer shall designate the area in which such persons are to be quarantined.

It is therefore clear, we think, that the city had the power and the ordinance authorizes the health officer to quarantine in designated areas persons infected as is plaintiff. But, as will be noticed, the ordinance also authorizes him to quarantine persons "reasonably suspected of having" the named diseases, and it is of this provision that especial complaint is made, and of the fact that plaintiff was originally arrested and detained upon orders of the health officer issued upon information and belief merely. We do not think, however, that either of these questions is now available to plaintiff, since it stands confessed upon this record that she has syphilis in contagious form and that this fact was established by an examination to which she voluntarily submitted and consented after her arrest.

As we have already seen, the ordinance is valid and enforcible against her in these circumstances, and it is only upon these conditions, which are the facts of this case, that she now has a right to question the validity of the ordinance.

We may, therefore, concede, but we do not decide, that the city had no power to confer upon the health officer or any person or board the power, as the ordinance attempts, to forcibly quarantine any one in a city hospital or pest house upon information and belief merely, and that plaintiff's arrest and detention upon order of the health officer, issued upon information and belief merely, was in violation of the constitutional inhibitions against unreasonable searches and seizures, without affecting in any degree our conclusion that upon the facts as pre-

sented by this record she was not entitled to a writ of prohibition preventing the enforcement of the ordinance against her and her detention in quarantine, or a mandatory injunction ordering her release therefrom.

We may also concede, as we think we must, that the court erred in sustaining a demurrer to the petition, but that concession does not alter our duty to affirm the judgment upon the entire record, since it is well settled that a correct judgment will not be reversed even if the court rendering it assigned a wrong reason therefor.

Judgment affirmed.